UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

FILED
APR - 8 2010
CLERK

*******************************************************************************

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. 98-30077-RAL |
| Plaintiff, | |
| -vs- | REPORT AND RECOMMENDATIONS FOR DISPOSITION OF PETITION TO REVOKE SUPERVISED RELEASE |
| LYNUS HAYES, | |
| Defendant. | |

*******************************************************************************

On January 27, 2010, Brian Messner, a United States Probation Officer, filed a petition seeking to revoke Defendant, Lynus Hayes's supervised release. In the petition, Messner alleged that Hayes, on the date the petition was filed, failed to reside and participate in a community corrections facility (Glory House) in violation of special condition number 5 of the conditions of supervised release. After Hayes was arrested and probable cause was found at a preliminary examination, this Court held a revocation hearing at which five witnesses testified and five exhibits were received into evidence. The Court presided over the revocation hearing pursuant to an express designation, set forth in a standing order entered by the District Court on March 22, 2010, to conduct such hearings on a report and recommendation basis. In accordance with that standing order and the provisions of 18 United States Code §3401(i), the Court now submits the following proposed findings of fact and recommendations with respect to Hayes's supervised release revocation petition and the disposition thereof.

I.

Hayes was convicted of kidnaping, a Class A felony, and sentenced to five years of supervised release on January 26, 1999. His original term of supervised release began on July 31, 2006. That term was later revoked on June 18, 2007, and he was sentenced to 16 months of custody and 44 months of supervised release. His second supervised release term commenced on June 26, 2008. On August 27, 2009, his second term was revoked and he was given a custody sentence of one year and one day and 12 months of supervised release. He started his third term of supervised release on January 8, 2010, and the same included the following condition:

> Special Condition Number 5: The defendant shall reside and participate in a community corrections facility program as directed by the probation office. The defendant shall be classified as a pre-release case.

Three days after his supervised release began, Hayes arrived at the Glory House, a community corrections/halfway house facility, located in Sioux Falls, South Dakota. He certified in writing, on January 11, 2010, that he had read or had explained to him the Glory House guidelines and that he understood and would abide by them. That same date, he acknowledged, again in writing, that he had read and understood the Glory House resident handbook, which contained the guidelines he had agreed to abide by. One such guideline, set forth in the handbook given to him, read as follows:

> Any form of physical contact or other forms of conning, manipulation or intimidation may be grounds for immediately removal from the program.

During the morning hours of January 27, 2010, Hayes was directed to clean the east T.V. room in one of the Glory House buildings. In the room, at the time, were Glory House

residents Joe Bechtold and Jacob Fines, who were watching T.V. At some point, Hayes shut the T.V. off and told Bechtold and Fines to get out of the room because Hayes was going to clean. Bechtold thought Hayes was kidding and laughed because residents usually cleaned around those who were present and did not ask them to leave.

When Bechtold started laughing, Hayes got mad. Bechtold then asked Hayes if Glory House staff said they had to leave. Hayes replied, "Are you calling me staff now, you rat bitch." In response, Bechtold began walking away, but Hayes followed Bechtold and kept saying, "Let's go, you rat bitch." Hayes also told Bechtold that, "I'll be down to your room when I get done." Bechtold characterized Hayes's tone and manner of speech as loud and violent.

Ken Theyen, a resident supervisor at Glory House, was in the area and observed Hayes point his finger at Bechtold. Upon seeing that Theyen was there, Hayes headed toward the supervisor's office. Bechtold, in turn, left the room and went downstairs.

Fines corroborated much of Bechtold's version of what happened. Fines testified that he and Bechtold were watching T.V. and Hayes came in and wanted to turn off the T.V. and have everyone vacate the room so that Hayes could clean. That, according to Fines, was not the typical way that chores were done at Glory House. Fines also testified that it looked to him like Hayes was upset about something, that Hayes "was raising his voice a little bit towards [Bechtold]" and that Bechtold was "trying to diffuse the situation the best he could" by making "some apologies and statements." Fines remembered Hayes following Bechtold "down the hall and part way down the stairway leading to the men's lower units where we have housing and where we live."

3

Linda Atkinson, Glory House's assistant director, was contacted about the incident and spoke to Theyen. After doing so, she called Hayes into her office and asked him to tell her what happened. Hayes's response was that "it was all over and everything was cool." Atkinson informed Hayes that intimidation or threatening behavior would not be tolerated. Hayes retorted that Atkinson was abusing her authority and that he was going to call his probation officer. During this conversation, Hayes was very agitated, clenching his fist and told Atkinson that "this was bullshit" and that she was "treating him like a kid." Atkinson felt threatened by Hayes's mannerisms and the language he used toward her. Because she believed that Hayes had threatened another resident, Atkinson decided that he had to be terminated from the facility and notified Messner of her decision. A formal termination letter was prepared later that day by Monica Jerke, Hayes's counselor, and sent to Messner.

Messner was the probation officer assigned to supervise Hayes while on release. Messner had met with and gone over all of the supervised release conditions with Hayes on January 12, 2010. He made the decision, after staffing the matter with his supervisor, to file a petition to revoke Hayes's supervised release. He did so because Hayes had threatened another resident, calling that resident a "rat bitch" which Messner believed would lead to serious consequences and violence. Messner also believed that based on Hayes's criminal history, which included violence, his two prior supervised release revocations and his inability to maintain a halfway house residence, another revocation petition was necessary.

II.

"A district judge may designate a magistrate judge to conduct hearings to modify, revoke or terminate supervised release, including evidentiary hearings, and to submit to the

judge proposed findings of fact and recommendations...." 18 U.S.C. § 3401(i). Here, the required designation was made by a written standing order from the District Court specifically authorizing this Court to conduct such hearings under § 3401(i). See United States v. Azure, 539 F.3d 904, 907-10 (8th Cir. 2008) (requiring that such a designation be made, and that the failure of the same constituted procedural, but not jurisdictional, error that was waived by the defendant when he failed to raise it with the district court).

III.

There being no issue as to its authority to preside over the revocation hearing, the Court now turns its attention to whether the Government has carried its burden. Unlike a criminal trial, proof beyond a reasonable doubt is not required to revoke a defendant's supervised release. Instead, revocation of supervised release requires that the court find, by a preponderance of the evidence, that the defendant violated a condition of supervised release. 18 U.S.C. §3583(e)(3); see also United States v. Black Bear, 542 F.3d 249, 252 (8th Cir. 2008).

Having carefully considered all of the evidence and testimony presented, and weighed the credibility of all five witnesses, the Court finds and concludes, under the relevant preponderance of the evidence standard, that Hayes violated special condition number 5 of the supervised release conditions that were imposed by the District Court on August 17, 2009. The evidence unequivocally shows that Hayes was terminated from Glory House, a community corrections facility, on January 27, 2010.

Hayes maintains that the termination was not warranted or justified under the Glory House guidelines, based on the circumstances present, and that as such, his termination from

5

the facility was invalid. The Court disagrees. Even looking behind the termination itself, the Court finds and concludes that Hayes's actions and conduct toward Bechtold were threatening and intimidating and violated Glory House's guideline regarding the same. Hayes knew or should have known that the failure to comply with this guideline could "be grounds for immediate removal from the [Glory House] program." Thus, whether based on his termination from the facility alone, or his behavior with Bechtold on January 27, 2010, Hayes has no legitimate ground now to complain about his supervised release being revoked. Because sufficient evidence exists to support the violation alleged, the revocation petition, and the relief prayed for therein, should be granted.

IV.

For the reasons set forth herein, and based on the evidence of record and the documents on file in this case, it is hereby

RECOMMENDED that Hayes's supervised release be revoked and that he be brought before the District Court for an appropriate dispositional hearing at a date and time to be later set by that Court.

Dated this 8th day of April, 2010, at Pierre, South Dakota.

BY THE COURT:

/s/ Mark A. Moreno

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

ATTEST:
JOSEPH HAAS, CLERK
BY: /s/ [signature]
Deputy
(SEAL)

NOTICE

Failure to file written objections to the within and foregoing Report and Recommendations for Disposition within fourteen (14) days from the date of service shall bar an aggrieved party from attacking such Report and Recommendations before the assigned United States District Judge. See 28 U.S.C. §636(b)(1), (3); 18 U.S.C. §3401(i).