UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 98-30077-RAL |
| Plaintiff, | * | |
| -vs- | * | ORDER AND OPINION ADOPTING REPORT AND RECOMMENDATION |
| LYNUS HAYES, | * | |
| Defendant. | * | |

Defendant is alleged to have violated a condition of supervised release. Under 18 U.S.C. § 3401(I), the Court referred the petition to revoke supervised release to United States Magistrate Judge Mark A. Moreno for a report and recommendation. After conducting a hearing on March 30, 2010, Magistrate Judge Moreno has recommended that the petition seeking to revoke Defendant's supervised release be granted. (Doc. 107).

Copies of such Report and Recommendation were served upon the parties as required by 28 U.S.C. § 636. Defendant has asserted objections to Magistrate Judge Moreno's recommendation to revoke his supervised release, as well as to specific factual findings. (Doc. 109).

In considering a magistrate judge's recommendation, a district court must make a "de novo determination of those portions of the report or . . . recommendations to which objection is made." 28 U.S.C. § 636(b)(1). A de novo review requires a district court to make its own determination of disputed issues. See United States v. Portmann, 207 F.3d 1032, 1033 (8th Cir. 2000). Where the Report and Recommendation is based upon an evidentiary hearing, the district court must, "at a minimum, listen to the tape of the hearing or read the transcript" in conducting de novo review. See United States v. Azure, 539 F.3d 904, 910 (8th Cir. 2008) (quoting United States v. Benitez, 244 Fed. Appx. 64, 66 (8th Cir. 2007)). When a defendant objects to the factual findings of the magistrate judge, the district judge must make its own de novo determination of the facts with no deference to the magistrate judge's findings. See 28 U.S.C. § 636(b)(1); Fed. R. C. P. 72(b). In order to make a proper de novo review of a magistrate judge's

report of factual findings, the district judge must make an independent review of the record, including tapes of evidence and the transcript of evidentiary hearings before the magistrate judge. See Portmann, 207 F.3d at 1033.

The Court has conducted a de novo review of the Report and Recommendation and the file as a whole, including the transcript of the revocation hearing. The Court finds that sufficient evidence supports a determination that Defendant violated a condition of his supervised release, and that the Report and Recommendation of Magistrate Judge Moreno should be adopted.

## FACTS

On October 20, 1998, Defendant pled guilty to kidnaping in Indian country, a violation of 18 U.S.C. §§ 1153 and 1201(a)(2). Defendant received a sentence of 100 months of imprisonment and five years of supervised release. Defendant's supervised release, which commenced on July 31, 2006, was later revoked on June 18, 2007, and he was sentenced to 16 months of imprisonment and 44 months of supervised release. This second term of supervised release commenced on June 26, 2008, and was again revoked on August 27, 2009, when he was sentenced to 366 days of imprisonment and 12 months of supervised release. Defendant's third term of supervised release, which began on January 8, 2010, included the condition that Defendant "reside and participate in a community corrections facility program as directed by the probation office. . . ." (Doc. 83, p. 4).

On January 11, 2010, after arriving at the Glory House, a community corrections/halfway house facility, Defendant certified in writing that he read, understood, and would abide by the Glory House guidelines. (T. 53-54).[1] The guidelines were contained in a Glory House handbook, which Defendant also certified in writing that he had read and understood. Within the handbook was the specific guideline that "[a]ny form of physical contact or other forms of conning, manipulation or intimidation may be grounds for immediately [sic] removal from the program." (T. 57).

The Glory House terminated Defendant from the facility on January 27, 2010, on the grounds of intimidating and threatening another resident. Defendant's probation officer filed a petition to revoke Defendant's supervised release. (Doc. 84). The petition to revoke Defendant's

---

[1]Any references to the transcript will be "T" followed by the page number or numbers.

supervised release alleged that Defendant violated his conditions of supervised release: "On or about January 27, 2010, at Sioux Falls, SD, Lynus Hayes failed to reside and participate in a community corrections facility (Glory House), in violation of Special Condition No. 5 of the Conditions of Supervised Release." (Doc. 84). United States Magistrate Judge Moreno thereafter held a revocation hearing to submit the proposed findings of facts surrounding the alleged occurrence that resulted in Defendant's termination from the Glory House and a recommendation regarding the revocation of Defendant's supervised release.

During the evidentiary hearing held on March 30, 2010, Glory House residents Joe Bechtold ("Bechtold") and Jacob Fines ("Fines") testified that on January 27, 2010, Defendant entered the Glory House TV room and told Bechtold and Fines to leave in order for Defendant to clean. (T. 21). According to testimony of Bechtold, Bechtold asked Defendant whether Glory House staff had said they had to leave the room, and Defendant replied, "Are you calling me staff now, you rat bitch." (T. 21). Bechtold testified that he walked away from Defendant. Bechtold and Fines both testify that Defendant then followed Bechtold down the hall and to the top of a stairway. (T. 21, 46). An employee of Glory House, Ken Theyen ("Theyen"), observed Defendant pointing his finger at Bechtold. (T. 8). Bechtold continued to his room, at which point Defendant said "I know where your room is, I'll come to your room." (T. 23). Bechtold testified that Defendant's tone and manner in which he was speaking to him was "violent." (T. 22). Fines testified that Defendant appeared upset and was "raising his voice a little bit towards Joe [Bechtold]." (T. 41). Theyen testified that Bechtold "appeared shaken" after the incident. (T. 10).

## DISCUSSION

Revocation of supervised release is governed by 18 U.S.C. § 3583. This Court may revoke supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3); United States v. Perkins, 526 F. 3d 1107, 1109 (8th Cir. 2008). The requisite standard of proof is less burdensome than that required in a criminal trial, proof beyond a reasonable doubt, but the evidence which the Court considers must still be credible. See Morrissey v. Brewer, 408 U.S. 471, 484 (1972) (holding a revocation cannot stand on "erroneous information"). The testimony before Magistrate Judge Moreno sufficiently established that Defendant violated a Glory House guideline which he

understood and should have known would result in his termination. Defendant spoke in a "violent" manner towards another Glory House resident and was said to have followed the resident towards his room, stating "I know where your room is, I'll come to your room." The termination from Glory House in turn is a violation of Defendant's condition of supervised release. The revocation petition, therefore, should be granted, and the Report and Recommendation adopted.

Defendant made three objections to the Report and Recommendation of Magistrate Judge Moreno which recommends a revocation of supervised release for violating the terms of his supervision. First, Defendant argues that the recommendation to revoke supervised release is flawed because Bechtold, who testified at the revocation hearing, had motive to exaggerate and place the blame on Defendant for starting the alleged incident. Defendant secondly argues that the Court should not credit Fines' testimony in light of his being under duress and coercion. Third, Defendant objects that probation officer Brian Messner and Glory House assistant director Linda Atkinson failed to conduct an independent investigation regarding the incident prior to terminating Defendant from the Glory House. The Court addresses each of the objections in turn.

Even if the testimony of Bechtold was an "exaggerated" depiction of the facts surrounding the incident at the Glory House, the recommendation of Magistrate Judge Moreno would still be proper. The Court has conducted a de novo review of the record, as required by 28 U.S.C. § 636(b)(1). Throughout the analysis, the Court evaluated whether the facts surrounding the incident show by a preponderance of the evidence that Defendant violated a condition of supervised release. Even if Bechtold's testimony was disregarded, the testimony of Fines, a second Glory House resident present in the TV room at the time of the alleged incident, supports a conclusion that Defendant violated a Glory House guideline leading to his termination. Fines testified that Defendant was "raising his voice a little bit towards Joe [Bechtold]" and Bechtold "was trying to diffuse the situation the best he could." (T. 41). The manner in which Defendant was acting moved Fines to seek out a staff member to report what was unfolding. (T. 39, 42). Considering all the testimony offered at the revocation hearing, this Court finds that Defendant violated the Glory House guideline, justifying his termination, and thereby violated a term of his supervised release.

Defendant objects to Magistrate Judge Moreno's crediting Fines' testimony. During the revocation hearing, Fines testified regarding a written statement taken by Atkinson. Fines testified that he gave the statement to Atkinson "under duress." (T. 44). He describes the process of giving the statement in the following terms: "I was basically agreeing to the phrases and words that Linda suggested to me to write on the piece of paper and then when I was prompted to do it, I signed at the bottom because I didn't want what's happening to me now to happen." (T. 44). Fines suggested in his testimony that he was told that he must provide a statement to avoid the revocation of his own supervised release. (T. 44). He also stated, "I was under duress at the moment. I was extremely stressed out. I felt like my life was in a threatened position . . . ." (T. 45). However, Fines does not dispute that the content of the statement was true. (T. 45). Furthermore, his testimony at the revocation hearing included a recount of the facts from the incident at the Glory House where he provided that Defendant "began to raise his voice and follow him down the hall and part way down the stairway leading to some of the men's lower units where we have housing and where we live." (T. 46). The manner in which the written statement was taken does not provide reason to discount the truth of the testimony at the revocation hearing. There is no evidence that he was under duress and coercion at the revocation hearing. No evidence suggests that the written statement was taken under duress and coercion either. Atkinson testified that she told Fines that he needed to be completely honest and that he may be subpoenaed to testify at court. (T. 63). Whether Fines was subpoenaed into court was not contingent upon him providing a written statement. Furthermore, the Magistrate Judge found Fines to be a credible witness. The Court is entitled to "give weight to the magistrate judge's credibility determination," although the Court's review is to be de novo. United States v. Martinez-Amaya, 67 F.3d 678, 681 (8th Cir. 1995).

The final objection by Defendant, contending that probation officer Brian Messner ("Messner") and assistant director Atkinson terminated Defendant from the Glory House without sufficient evidence that Defendant in fact violated Glory House guidelines, is overruled. Messner testified at Defendant's revocation hearing that the Glory House faxed a termination letter regarding Defendant on January 27, 2010. (T. 71). The termination letter, marked as Exhibit 5 during the revocation hearing, is written by Monica Jerke, a Glory House counselor. The letter states that Defendant "was terminated from Glory House on 1/27/10 due to threatening behavior"

and "was not willing to make the necessary commitments, or display the appropriate behaviors . . . ." Messner, as a United States Probation Officer, has developed a relationship with Defendant and knows of his previous behavior. The Glory House, however, is in the superior position to decide whether Defendant has complied with its guidelines. Notification of Defendant's termination from the halfway house program was sufficient evidence for Messner to base his petition to revoke supervised release. The testimony of Atkinson at the revocation hearing demonstrates that she conducted a sufficient investigation regarding the events leading to Defendant's termination, and no authority exists that would require Atkinson to give Defendant a "second chance," as asked for by Defendant in his objections.

Based upon the foregoing, it is hereby

ORDERED that the Defendant's objections (Doc. 109) to the Magistrate Judge's Report and Recommendation are overruled. It is further

ORDERED that the Report and Recommendation (Doc. 107) is adopted. It is further

ORDERED that the Petition to Revoke Supervised Release (Doc. 84) is granted. It is finally

ORDERED that a dispositional hearing is scheduled for May 17, 2010, at 4 p.m. The supplemental presentence report shall be provided to the Government, Defendant, and this Court by May 10, 2010. All objections to the presentence report shall be made no later than May 13, 2010.

Dated May 4, 2010.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE